(14 Misc. Rep. 48.)

PEOPLE ex rel. THORNTON v. HOGAN et al.

(Supreme Court, Special Term, New York County. August, 1895.)

LOCAL JUDICIAL OFFICER—TERM—POWER TO TERMINATE.

    Const. 1895, art. 6, § 22, providing that local judicial officers, "in office when this article takes effect, shall hold their office until the expiration of their respective terms," does not affect the power of the legislature, existing when the constitution took effect, to terminate at any time the terms of such local judicial officers by abolishing the offices to which they were elected; and therefore Laws 1895, c. 601, abolishing the court of special sessions in New York City, is valid.

Habeas corpus by Thomas Thornton against Edward Hogan and others to review the conviction of relator by respondents, assuming to act as justices of the court of special sessions.

P. A. McManus, for relator.

Lewis L. Delafield, for respondent the clerk of the court of special sessions.

Noah Davis and George Hoadly, for respondents Hogan, Meade, and Feitner.

STOVER, J. The relator, Thomas Thornton, was arrested and brought before a police justice in the city of New York on June 20, 1895, upon a charge of assault in the third degree. Being arraigned, he waived examination, interposed the plea of not guilty, and elected to be tried in a court of special sessions. The police justice held him to answer in that court, and the papers were transmitted to the clerk. He was admitted to bail June 25th. On June 28th the case was reached for trial in the court of special sessions, which was then composed of the respondents Hogan, Meade, and Feitner. Some testimony was taken, and an adjournment was taken until July 1st, at 10 o'clock. By the provisions of chapter 601 of the Laws of 1895 the jurisdiction theretofore vested in the

police justices in the city and county of New York, and the courts held by them, including the courts of special sessions, etc., ceased and determined on the 30th day of June, 1895, at midnight, and the office of police justice in the city and county of New York was abolished; and by the same act nine city magistrates were appointed in and for the city and county of New York, and the jurisdiction theretofore vested in the police justices, together with other jurisdiction, was conferred upon said city magistrates. Notwithstanding the provisions of this act, the said Hogan, Meade, and Feitner, on the 1st day of July, 1895, as appears by the return to the writ of habeas corpus, claiming to act as a court of special sessions, adjudged the relator guilty, and that he pay a fine of $10, or stand committed not exceeding 10 days to the city prison, and thereupon, it is alleged, took the prisoner into their own custody. Thereupon, upon petition, a writ of certiorari, directed to the respondent, the present clerk of special sessions, organized under the act of 1895; a writ of certiorari, addressed to Keating, the former clerk of special sessions; and a writ of habeas corpus, directed to Hogan, Meade and Feitner, directing them to produce the relator, Thornton,—were directed to and did issue out of this court. The defendant Keating returns what is alleged to be a record of the proceedings had upon conviction, and the adjudication by the court of special sessions, constituted by the police justices Hogan, Meade, and Feitner, convicting the relator of the offense charged, and ordering that he stand committed to the custody of the keeper of the city prison until the fine be paid, or not exceeding 10 days. The present clerk of the court of special sessions, being the court organized under the act of 1895, returns the proceedings from the time of the filing of the complaint charging the relator with assault down to the admission of bail on the 25th day of June, and further certifies that there is no record of further proceedings in his office. The return to the writ of habeas corpus on behalf of Hogan, Meade, and Feitner recites the proceedings, and returns that the relator is held, in accordance with the usage in such cases, in the custody of said police justices, in order to afford him a reasonable opportunity to pay said fine, and was in the custody of said respondents when the writ of habeas corpus was served on them for the purpose aforesaid. The legal claim made by the respondents Hogan, Meade, and Feitner is that the act of 1895, abolishing the police justices of the city and county of New York, and creating the said magistrates, is unconstitutional, and that, notwithstanding the provisions of that act, the police justices still hold their offices, and were entitled to exercise the functions of their office, and to perform the duties of special sessions justices. That the respondents had no right to hold the relator in their custody is quite clear. The commitment is to the keeper of the city prison, and it can hardly be said to be a justification for imprisonment that the prisoner is held against his own protest and desire, in order to afford him an opportunity to pay a fine which he has not signified his intention of paying, or any desire to make an effort to pay or obtain. Such a favor might be granted at his request, but it can hardly be forced upon him against his will. That

his detention, then, by the respondents, is utterly unauthorized, need not require further discussion, and the case might well end here with the discharge of the prisoner, but for the provisions of the statute which requires that in a case where the person restrained is not lawfully in the custody of the person restraining him, the order remanding must commit him to the custody of the officer or person entitled to restrain him. A return, purporting to be extracted from the minutes of the court, shows that the prisoner has been convicted by persons claiming to act, and another return shows proceedings up to a certain time which are conceded by all parties to be regular and valid, viz. the proceedings up to the admission of bail. And while it would be more satisfactory to have the determination of questions of the character raised here after a trial and fuller consideration, yet I deem it best, however unfortunate it may be, that the questions raised should be now determined in order that there may be an orderly proceeding in the matter, and that unnecessary proceedings may not further complicate the questions which are of so much importance in the administration of criminal justice in the city. It is claimed on behalf of some of the respondents that the conviction is illegal, and, in order to determine to whose custody the relator should be remanded, it becomes necessary to examine the question as to whether he has been legally convicted of the crime, or whether he is still liable to be tried upon the charge upon which he is held; for, if he has been convicted, he must be remanded to the keeper of the city prison, in accordance with the judgment of conviction, and, if he has not, he must be remanded to the court of sessions for trial. By section 18 of article 6 of the constitution it is provided:

"Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no inferior local court hereafter created shall be a court of record. The legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article. Except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct."

And by section 22 of the same article it is provided:

"Justices of the peace and other local judicial officers provided for in sections 17 and 18, in office when this article takes effect, shall hold their offices until the expiration of their respective terms."

The respondents were in office at the time of the adoption of the constitution, and the terms of office of the various police justices expired, by limitation of time, at different times, varying from four to nine years. It is contended by the respondents that the interpretation to be given to section 22 is that they shall hold for the full period of time for which they have been appointed or elected, and, necessarily, that it was not within the power of the legislature to abolish the office during the time for which they had been appointed. Upon the other hand, it is claimed that the term of office cannot continue longer than the office itself, and that, the legislature having power to abolish the office, the term of the incumbent thereby terminates. The right of the legislature to abolish or destroy local courts of civil and criminal jurisdiction is not and

cannot well be questioned, but the contention on behalf of the respondents is that, as to the justices of such courts in office at the time of the adoption of the constitution, the legislature has no power to abolish the office, if by so doing the term of the incumbent is abridged. In construing section 22 it should be kept in mind that the framers of the constitution were dealing with two classes of offices,—one created by the constitution, and whose existence is independent of the legislature; and another class, created by the legislature, and whose existence could be terminated at any time by the power which created it; and this class of offices embraces inferior local courts of civil and criminal jurisdiction. There can be no question that the court of special sessions is an inferior court of local criminal jurisdiction. It was created by the legislature. Again, by section 18, all judicial officers, except as otherwise provided by the constitution, are required to be elected or appointed at such time and in such manner as the legislature may direct. So, then, without discussing the provisions of the constitution which designated the offices, and fixed the terms of the officers who should hold them, independent of the legislature, as such discussion is not profitable for the present consideration, there can be no doubt that under section 18 of article 6, standing alone, the legislature had full power to create and destroy courts of special sessions, to fix the terms of the officials who should constitute the court, and to terminate the existence of the court itself at will. So that, unless section 22 has abridged the right of the legislature in that respect, it would seem that the statute in question was a valid exercise of legislative power. In construing this section, effect is to be given to the legislative intent, if it can be done, within the provisions of the instrument itself, and this section is to be construed in harmony with the other sections of the constitution. And in considering the constitution, as well as acts of the legislature, the intention is to be gathered from the whole instrument, and effect is to be given thereto, and no single section or clause is to be so construed as to defeat the legislative intent, if, when read in connection with the other sections of the instrument, such construction can be given as will effect the legislative intent. Again, in this section the constitution deals with the terms of officials. It is well understood that prior to the time of the taking effect of the constitution the "term" of police justices was of 10 years' duration, subject to the power of the legislature, above referred to, to abolish the office, and thereby end the term. The term, then, of police justices, was 10 years, unless the legislature should abolish the office, and the abolition of the office was as complete a termination of the term of the holder as the expiration of the time for which he was originally appointed. In other words, his term would end at the expiration of 10 years, and it would end upon the abolition of the office by the legislature. There is to be gathered nowhere from the reading of the section in question an intention on the part of the framers of the constitution to curtail the power of the legislature over the office or the term of the incumbents, nor is there anywhere within the instrument any indication of an intention to create a longer term for the incum-

bents who happened to hold the place at the time of the adoption of the constitution than for those who had preceded or who might succeed them. It may well be said that, in the absence of section 22, it would have been held that the incumbents held their offices until the end of their terms, yet, out of abundant caution, perhaps, the framers of the constitution have declared that the local judicial officers in office when the article took effect should hold until the expiration of their respective terms. Considering this section to mean that they should hold for the length of time for which they were originally appointed, unless the legislature should terminate the term by the abolition of the office, the incumbents of the office at the time the constitution went into effect are placed upon precisely the same plane with other incumbents, with the same tenure that had attached to the office from the time of its creation, and that would attach to any office that might be thereafter created under the provisions of the constitution, making an harmonious scheme, depriving the legislature of none of its functions which had been expressly conferred by the instrument itself, violating no right of the individual which had accrued by the acceptance of the position, and reserving the rights of the public and the individuals to the forum provided by the constitution itself. It seems to me that any other construction would tend to render ineffectual the very provisions of the constitution itself. If it is to be said that the present incumbents of the office cannot be removed until they have served the full period of time for which they were originally appointed, it necessarily follows that the legislature cannot abolish the court during such incumbency, and for 10 years from the time of the last appointment of a police justice the legislature would be powerless to act, and until the last of the incumbents in office at the time of the adoption of the constitution had served his full period of time the legislature would be restricted in the exercise of the power conferred upon it by the constitution. Such a construction ought not to be given to the section in question, if reasonable construction would prevent the suspension of the power of the legislature to deal with the office. The framers of the constitution have dealt in different places with the different subjects, viz. the offices themselves, and the terms of the incumbents. They have prevented a contention as to the terms of the officers in office at the time of the adoption of the constitution by foreclosing the claim that any vacancy existed by reason of the constitution, and declaring that as to those officers they should continue until the expiration of their terms, without expressing any limitation upon the power of the legislature granted by the same instrument, and using language which may be well construed, I think, to not abridge those powers. Again, the power of the legislature to add to or take from the jurisdiction of the courts or the officials who constitute them cannot be questioned. It may provide for the organization of a court of special sessions, independent of the police justices. There is no limitation upon the power of the legislature except as contained in the constitution itself, and that limitation in no wise prevents the legislature from entirely depriving the police justices, even if the office

were continued, from sitting in a court of special sessions. It might designate an entirely new set of officials who should act as justices of special sessions. This it has done by the act in question. It follows that the act of 1895 was a valid exercise of legislative power, and that the term of the police justices of the city of New York was thereby ended, and that the respondents herein had no power to act as a court of special sessions subsequent to midnight of the 30th of June, 1895; that the relator's conviction was void; that he is still liable to be tried in a special sessions upon the charge, and should be remanded for trial in the special sessions.

Ordered accordingly.